IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ORLANDO CONCEPCION,<br><br>            Plaintiff,<br><br>   v.<br><br>CITY OF SANDY SPRINGS, SANDY<br>SPRINGS POLICE DEPARTMENT,<br>and TERRY SULT, Chief of Police of<br>the Sandy Springs Police Department<br>(in his individual and official capacity),<br>jointly and severally as<br><br>            Defendants. | CIVIL ACTION FILE NO.<br><br>1:12-CV-02784-MHS-WEJ |

## <u>FINAL REPORT AND RECOMMENDATION</u>

Plaintiff, Orlando Concepcion, a former Sergeant with the Sandy Springs Police Department, filed this action [1] for alleged discrimination and retaliation. After a period of discovery, defendants filed a Motion for Summary Judgment [25]. As explained more fully below, the undisputed material facts do not support plaintiff's claims that he was discriminated against or that he was the victim of retaliation; therefore, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**.

## I.    **STATEMENT OF FACTS**

The process for separating disputed from undisputed material facts is governed by Local Rule 56.1.  In compliance with Local Rule 56.1(B)(1), defendants as movants filed a statement of undisputed material facts.  (See Defs.' Stat. of Undisp. Mat. Facts as to Which There Is No Genuine Issue to Be Tried [25-1] ("DSUMF").) Local Rule 56.1(B)(2)(a) requires the opposing party to submit a response to the movants' statement of undisputed material facts which "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts."   N.D. Ga. R. 56.1(B)(2)(a)(1). Under that Rule, the "Court will deem each of the movant's facts as admitted unless the respondent"

(i)    directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number);

(ii)    states a valid objection to the admissibility of the movant's fact; or

(iii)    points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in [Local Rule] 56.1B.(1).

Id. 56.1(B)(2)(a)(2).

AO 72A
(Rev.8/82)

Mr. Concepcion submitted as part of his Brief in Opposition to Defendant's Motion for Summary Judgment [26] ("Pl.'s Opp'n") his responses to DSUMF.  (Id. at 3-4.)   In those responses, plaintiff did not dispute a number of defendants' proposed facts.  (Id., admitting DSUMF ¶¶ 1-3, 8, 10, 13-14, 17-18, 29, 31, 33, 38, 41-43.) However, Mr. Concepcion "disputes" defendants' remaining proposed facts, but in so doing, failed to comply with the above-quoted Local Rule.  Specifically, plaintiff failed to refute any of the movants' proposed facts with concise responses supported by specific citations to evidence (including page or paragraph number). See N.D. Ga. R. 56.1(B)(2)(a)(2)(i).  Instead, for each denial he wrote, for example, "Plaintiff disputes Paragraph 4."  (See Pl.'s Opp'n 3-4, disputing DSUMF ¶¶ 4-7, 9, 11-12, 15-16, 19-28, 30, 32, 34-37, 39-40.)

This failure to convert defendants' proposed facts in the manner required by the Local Rules has consequences.  Under Local Rule 56.1(B)(2)(a)(2), this Court must "deem each of the movant's facts admitted."   See also Reese v. Herbert, 527 F.3d 1253, 1267-71 (11th Cir. 2008) (court deems defendants' proposed facts admitted if supported by the record citation provided); Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co., 944 F.2d 809, 811 n.6 (11th Cir. 1991) (per curiam) ("the

3

facts as set out in [defendant's] concise statement of facts not at issue are deemed admitted" by operation of the Local Rules because they were not controverted).

Although plaintiff did not controvert defendants' proposed facts, he did (as noted above) file an Opposition Brief.[1]  The Local Rules provide that, along with a response to the movant's statement of undisputed facts and a brief, a respondent shall include a separate "statement of additional facts which the respondent contends are material and present a genuine issue for trial."  N.D. Ga. R. 56.1(B)(2)(b).  Plaintiff failed to comply with that Rule.[2]

Given these failures to comply with the Local Rules, all of defendants' proposed facts have either been admitted by plaintiff or they have been deemed admitted by operation of the Local Rules.  Therefore, the undisputed material facts are as follows.

---

[1] Plaintiff's Opposition Brief is of little assistance to the Court, because it contains only a recitation of the summary judgment standard and the burdens imposed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Comm. Affairs v. Burdine, 450 U.S. 248 (1981). (See Pl.'s Opp'n 2-4.)

[2] Plaintiff's Opposition Brief contains a short "Statement of Facts." (See Pl.'s Opp'n 1.)  However, the Court cannot consider facts set out only in a brief and not in a respondent's statement of additional material facts.  See N.D. Ga. R. 56.1(B)(1)(d), -(2)(b).

AO 72A
(Rev.8/82)

The City of Sandy Springs ("the City") hired plaintiff as a police officer on February 13, 2006, and subsequently promoted him to Sergeant on May 4, 2006. (DSUMF ¶ 1.)   As a sergeant, plaintiff supervised six to eight patrol officers, responded to calls, approved reports, prepared evaluations, and enforced Sandy Springs Police Department ("SSPD") and City policies.  (Id. ¶ 2.)  Plaintiff was an at-will employee of the City.  (Id. ¶ 3.)

On or about February 11, 2008, plaintiff printed and placed a Mothers Against Drunk Driving ("M.A.D.D.") poster outside of Sergeant Tanya Smith's office door. (DSUMF ¶ 4.)  Plaintiff targeted Sergeant Smith because he was upset that she had been selected for a Special Projects position over him.  (Id. ¶ 5.)  Related to the M.A.D.D. incident, plaintiff received a one-day suspension for violating the SSPD Standards of Conduct policy which prohibits: "Conduct Unbecoming:  Rude, insulting, or offensive language or conduct directed toward the public or other employees."  (Id. ¶ 6.)

On or about November 13, 2009, Chief Sult received a report that plaintiff posted derogatory information about SSPD on the social networking site, Facebook, and therefore directed Lieutenant Fraker to open an internal investigation into the matter.  (DSUMF ¶ 7.)  Plaintiff admitted posting a comment on Facebook to the

5

effect of "[it] seems like the only way to get something at work is that you have to kiss ass," because he was upset that Chief Sult had denied his request for a training class  (Id. ¶ 8.)  Officer Johns reported that he heard plaintiff make derogatory comments about other SSPD officers purportedly "sucking up" to Chief Sult and referring to the Chief as a "pussy."  (Id. ¶ 9.)

Plaintiff admitted posting the following comments on his Facebook page:

- Orlando J. Concepcion is back at work . . . frustrated at all the BS. (July 13[, 2009] at 11:06 a.m.)

- Orlando J. Concepcion is han[g]ing out with the FEDS today?  (July 24[, 2009] at 2:12 p.m.)

- Orlando J. Concepcion  Have you ever been in a good mood when you're off???  Then come back to work . . . and pissed off for no reason . . . I think the BS in this job is getting to me.  (July 27[, 2009] at 6:36 a.m.)

- Orlando J. Concepcion is working with the FBI this week . . . I smell a million dollar drug seizure coming our way soon . . . I will be a hero in Sandy Springs  (August 2[, 2009] at 4:07 p.m.)

- Orlando J. Concepcion is wondering why I get stupid complaints from people who do not know how to mind their freakin business . . . If they don't live in Sandy Springs or pay taxes in Sandy Springs, I have no use for them  (August 15[, 2009] at 6:32 a.m.)

- Orlando J. Concepcion working today like always . . . I have a trial today on a burglar who does not take the plea deal . . . Dumb ass!!!! Take the plea . . . you had the jewelry in your hands when I caught you

6

. . . I am going to slam dunk you on the stand!!!"  (October 6[, 2009] at 7:56 a.m.)

• Orlando J. Concepcion getting ready for a big DEA/FBI operation tomorrow  (October 20[, 2009] at 6:32 a.m.)

• Orlando J. Concepcion Drug takedowns  (October 20 [, 2009] at 9:47 a.m.)

• Tim Burell You guys working PC [Plain Clothes] today  (October 28[, 2009] at 7:29 a.m.)

• Orlando J. Concepcion  Yes . . . we will be hitting everything between Nwood and Lake Placid  (October 20[, 2009] at 9:47 a.m.)

• Orlando J. Concepcion at work recovering from all of the alcohol consumption at the UGA game yesterday . . . anyone have Tylenol???? (November 8[, 2009] at 6:47 a.m.)

(DSUMF ¶ 10.)  As of November 13, 2009, plaintiff had authorized 358 people to view his Facebook postings, including David Johns, one of his subordinates.  (Id. ¶ 11.)

On October 8, 2009, plaintiff received a Special Order issued by Chief Sult to all police personnel, clarifying his expectations with respect to officers' publishing information on social networking sites, and warning officers that

[a]ny employee publishing any form of media which is exposed to public view comments, messages, photos, video, other media that is or otherwise detrimental to the City of Sandy Springs, SSPD, the SSPD mission, goals, policies, procedures or members of the department (at

7

any level) may be subject to disciplinary action. . . . We have high quality and ethical employees. Please, just use common sense when using these valuable internet tools. For guidance please refer to the Code of Ethics in our policy. As police officers we are always held to a higher standard in both our on duty and off duty lives.

(DSUMF ¶ 12.)[3] Plaintiff admits that his Facebook comments concerning SSPD and law enforcement operations were inappropriate. (Id. ¶ 14.)

On or about November 19, 2009, Lt. Fraker opened an investigation concerning a complaint from Officer Alicia Turner relating to a picture she found in her departmental mailbox on November 3, 2009, which depicted one stick figure stabbing another in the back and the words, "CAUTION! EVERYWHERE." (DSUMF ¶ 15.) Officer Turner reported that she believed plaintiff to be the culprit of the backstabbing picture because he believed she had stabbed another officer (plaintiff's friend) in the back. (Id. ¶ 16.)

_____

[3] The Code of Ethics states in part:

Whatever I see or hear of a confidential nature or that is confided in me in my official capacity will be kept secret unless revelation is necessary in the performance of my duty. I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions.

(DSUMF ¶ 13.)

8

Plaintiff admitted printing the backstabbing picture, but denied intentionally placing it in Officer Turner's mailbox. (DSUMF ¶ 17.) Plaintiff stated that Officer Juan Trujillo asked him to print a picture for him in connection with a football-related rivalry and, although he intended to place the picture in that officer's mailbox, he may have inadvertently placed it in Officer Turner's mailbox. (Id. ¶ 18.)

Upon completing his investigation, Lt. Fraker sustained the complaint against plaintiff, finding that he had violated the SSPD's Standard of Conduct prohibiting conduct unbecoming, rude, insulting, or offensive language or conduct directed toward the public or other employees. (DSUMF ¶ 19.) Lt. Fraker prepared an Internal Affairs Report summarizing his investigations of the Facebook and backstabbing incidents and forwarded them to Lt. Scott Jamison for further action. (Id. ¶ 20.) Lt. Jamison prepared and forwarded to Chief Sult his recommendation, which was to terminate plaintiff. (Id. ¶ 21.)

Chief Sult reviewed Lt. Jamison's recommendations along with all three internal investigations concerning plaintiff. (DSUMF ¶ 22.) Chief Sult determined that plaintiff's Facebook postings violated the following SSPD Standards of Conduct: (1) Conduct Unbecoming; (2) Inattentive Behavior; (3) Employee will not reveal facts about police business; (4) Employee will not express derogatory

9

remarks; and (5) Release of information only by the Public Information Officer. (Id. ¶ 23.)

Chief Sult determined that by placing the backstabbing picture in Officer Turner's departmental mailbox, plaintiff violated the SSPD Standard of Conduct prohibiting conduct unbecoming and rude, insulting, or offensive language or conduct directed toward the public or other employees. (DSUMF ¶ 24.) Chief Sult determined that the totality of plaintiff's conduct could have negatively impacted his reputation within SSPD, the morale of the Department, the integrity of police operations and the safety of the personnel involved, and SSPD's reputation with federal and local law enforcement officers. (Id. ¶ 25.)

Chief Sult determined that plaintiff violated his Oath of Office and the Code of Ethics, which state:

> Whatever I see or hear of a confidential nature or that is confided in me in my official capacity will be kept secret unless revelation is necessary in the performance of my duty. I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions.

(DSUMF ¶ 26.)[4]

---

[4] Chief Sult was compelled to contact the FBI to advise it of the potential operational security breach created by Plaintiff's Facebook postings. (DSUMF ¶ 27.) Chief Sult was contacted by the Fulton County Sheriff, who had learned of

10

Chief Sult met with plaintiff on December 2, 2009, to discuss the charges against him, and he advised plaintiff of his termination and of the reasons for that decision.  (DSUMF ¶ 29.)  At the time of the termination decision on December 2, 2009, Chief Sult was not aware of plaintiff's conversation with Lt. Fraker and Sgt. Momon on November 18, 2009, wherein plaintiff said words to the effect of, "there's [sic] supervisors here that can . . . sleep with officers . . . and nothing gets done about it."  (Id. ¶ 30.)

Plaintiff appealed his termination to the City Manager, John McDonough, and requested a grievance hearing in accordance with City policy.  (DSUMF ¶ 31.)  Mr. McDonough appointed a neutral fact-finder, Mr. Gregory Jay, to conduct the hearing on February 16, 2010.  (Id. ¶ 32.)  During the hearing, plaintiff and the City presented evidence and witnesses, cross-examined the other party's witnesses, and presented closing argument.  (Id. ¶ 33.)

On March 2, 2010, Mr. Jay issued a recommendation to Mr. McDonough that Chief Sult's termination decision be upheld.  (DSUMF ¶ 34.)  Mr. McDonough adopted Mr. Jay's recommendation and upheld plaintiff's termination.  (Id. ¶ 35.)

---

Plaintiff's Facebook postings, who urged Sult to prosecute plaintiff criminally for violation of his Oath of Office.  (Id. ¶ 28.)

11

Under City policy, the City Manager has the final authority with respect to employee discipline.  (Id. ¶ 36.)

Plaintiff filed an EEOC Charge against the City on March 2, 2010, alleging that he was terminated because of his national origin and in retaliation for complaining to Internal Affairs about his immediate manager violating the fraternization/sexual harassment policy.  (DSUMF ¶ 41.)

Plaintiff filed a Voluntary Petition with the U.S. Bankruptcy Court for the Middle District of Georgia on December 12, 2011, Case No. 11-32034 ("Petition"). (DSUMF ¶ 38.)  In the Statement of Financial Affairs section of the Petition, plaintiff swore under penalty of perjury that he was not a party to any administrative proceedings within the preceding year, when in fact, he had a pending EEOC Charge against the City (filed on March 2, 2010).  (Id. ¶ 39.)  In Schedule B of the Petition, in which plaintiff was required to identify "contingent and unliquidated claims of every nature" and provide their value, plaintiff stated under penalty of perjury that there were "none."  (Id. ¶ 40.)

Plaintiff, through his attorney, requested a Notice of Right to Sue from the EEOC on May 9, 2012.  (DSUMF ¶ 42.)  The EEOC issued the Notice of Right to Sue on May14, 2012.  (Id. ¶ 43.)  Suit was filed here on August 13, 2012 [1].

12

Plaintiff never served Chief Sult with a summons or copy of the Complaint, and he never requested that Chief Sult waive service of process.  (DSUMF ¶ 37.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment should be "rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  Rice-Lamar v. City of Fort Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party then "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); see also Celotex, 477 U.S. at 324 (non-movant then required "to go

13

beyond the pleadings" and present competent evidence in form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial"). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255); see also Hammer v. Slater, 20 F.3d 1137, 1141 (11th Cir. 1994) ("Once the moving party has met its initial burden by negating an essential element of the non-moving party's case, the burden on summary judgment shifts to the non-moving party to show the existence of a genuine issue of material fact. For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.") (citation and internal quotation marks omitted).

14

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 251. The applicable substantive law will identify those facts that are material. Id. at 248. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. Id. Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. For factual issues to be "genuine," they must have a real basis in the record. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." Id. at 587.

## III.   DISCUSSION

Plaintiff alleges that defendants terminated his employment because of his national origin (Hispanic) and/or in retaliation for his reporting misconduct by other non-Hispanic SSPD employees. On that basis, he contends that defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment, the Fourth Amendment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. §§ 1983, 1985, and 1988. (See Compl.)

Defendants make numerous arguments in their Memorandum [25-2] for entry of summary judgment in their favor on all of these claims. Unfortunately, plaintiff's Opposition Brief refutes none of these arguments. This has adverse consequences for plaintiff's claims, for under well-established law, "a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." Kramer v. Gwinnett Cnty., Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga.), aff'd, 116 F. App'x 253 (11th Cir. 2004) (table decision); see also Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party."); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1148 (N.D. Ga. 1997) ("[U]nder Local Court Rule 7.1 of the United States District Court for the Northern District of Georgia, factual and legal claims to which there is no response should be treated as unopposed.").

Because plaintiff has failed to respond to any of the arguments made by defendants, this Court must assume that he has abandoned his claims and consents to entry of summary judgment against him. The Court lists each of those arguments below, but because they are unopposed, does not discuss them in detail.

16

Nevertheless, sufficient legal and factual support exists for the undersigned's recommendation that summary judgment should be entered for defendants.

### A.    SSPD Is Not An Entity Subject to Suit

Defendants argue that plaintiff's claims against SSPD should be dismissed because a police department is not a separate legal entity subject to suit, but is "merely the vehicle through which the city government fulfills its policing functions." Manders v. Lee, 285 F. 3d 983, 990 n.6 (11th Cir. 2002); see also Kile v. Betuel, 973 F. Supp. 1070 (S.D. Ga. 1997). Because plaintiff does not oppose this argument, the undersigned **RECOMMENDS** that summary judgment be entered for the SSPD.

### B.    Plaintiff Failed to Perfect Service of Process on Defendants

Defendants argue that the Complaint should be dismissed because plaintiff failed to effectuate service of process on them. The Complaint was filed on August 13, 2012. Two months later, plaintiff requested that the City waive service pursuant to Federal Rule of Civil Procedure 4(d). As it is not "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h)," see Fed. R. Civ. P. 4(d)(1), the City did not execute and return the waiver form (AO 399) in response to this request. See Lepone-Dempsey v. Carroll Cnty., 476 F.3d 1277, 1281-82 (11th

17

Cir. 2007) ("[T]he waiver of service procedure set forth in Rule 4(d) does not apply to local governments."). As for Chief Sult, while he is "[a]n individual . . . subject to service under Rule 4(e)," Fed. R. Civ. P. 4(d)(1), plaintiff never requested that he waive service, and there has been no attempt to date to effectuate service of process as to any defendant. Since plaintiff has not even attempted service of process on defendants within Federal Rule of Civil Procedure 4(m)'s 120 day period, defendants argue that the Complaint should be dismissed. Given that plaintiff does not oppose this argument, the undersigned **RECOMMENDS** that summary judgment be entered for all defendants given plaintiff's failure to serve process upon them.

### C.     Plaintiff's Claims are Barred by Judicial Estoppel

Defendants argue that plaintiff's claims are barred by judicial estoppel because he failed to disclose his pending EEOC charge when he filed a bankruptcy petition. "Judicial estoppel is an equitable doctrine that precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1293 (11th Cir. 2003). "The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the

18

exigencies of the moment." <u>Burnes v. Pemco Aeroplex, Inc.</u>, 291 F.3d 1282, 1285 (11th Cir. 2002).

Because plaintiff does not oppose defendants' argument that judicial estoppel applies in this case, and it is undisputed that Mr. Concepcion did not disclose his pending EEOC charge to the Bankruptcy Court, the undersigned **RECOMMENDS** that summary judgment be entered for defendants on all of plaintiff's claims.

**D.      Summary Judgment Should Be Entered for Defendants on Plaintiff's Discrimination Claims**

Plaintiff alleges that defendants terminated his employment because of his national origin in violation of Title VII[5] and the Equal Protection Clause (both directly under the Fourteenth Amendment and through 42 U.S.C. § 1983). (Compl. ¶ 32.)   Defendants make numerous arguments concerning these claims which plaintiff has not opposed.  Accordingly, the undersigned **RECOMMENDS** that the Motion for Summary Judgment as to these discrimination claims be **GRANTED**.

---

[5] To the extent that plaintiff is asserting Title VII claims against Chief Sult or the SSPD, they are foreclosed because neither the Chief nor the Department meet the definition of an "employer" under Title VII.  <u>See</u> <u>Busby v. City of Orlando</u>, 931 F. 2d 764, 772 (11th Cir. 1991) (per curiam).  Therefore, summary judgment should be entered for Chief Sult and the SSPD on plaintiff's Title VII claims.

### 1.     Plaintiff Cannot Assert an Equal Protection Claim Directly Under the Constitution

Defendants argue that where (as here) a plaintiff alleges a violation by local government actors of rights protected by the Constitution, 42 U.S.C. § 1983 provides the exclusive remedy.  Plaintiff does not oppose this argument.  Therefore, to the extent that he is pursuing a claim directly under the Fourteenth Amendment's Equal Protection Clause, defendants are entitled to entry of summary judgment.

### 2.     Plaintiff's Section 1983/Equal Protection Claim is Barred by the Statute of Limitations

Plaintiff's § 1983/Equal Protection Clause claim arises from the termination of his employment on December 2, 2009.  (Compl. ¶ 32.) "The statute of limitations for a section 1983 claim arising out of events occurring in Georgia is two years." Thigpen v. Bibb Cnty., Ga., Sheriff's Dep't, 223 F.3d 1231, 1243 (11th Cir. 2000). Defendants assert that, since plaintiff did not file the Complaint until August 13, 2012, more than two years after his termination, his § 1983 equal protection claim is time barred.  Because plaintiff does not oppose this argument, and the undisputed fact support defendants' assertion, the undersigned **RECOMMENDS** that summary judgment be entered against plaintiff on his § 1983/Equal Protection Clause claim.

20

### 3.   Plaintiff's National Origin Claim Fails as Matter of Law

Plaintiff alleges that he was discriminated against because of his national origin. In a Title VII case, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. Green v. Sch. Bd. of Hillsborough Cnty., Fla., 25 F.3d 974, 978 (11th Cir. 1994). The issue on summary judgment is whether Mr. Concepcion has carried his burden of producing evidence sufficient to create a genuine issue of material fact on his discrimination claim. See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998); see also Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004) (discrimination claims under the Equal Protection Clause and Title VII are subject to the same analysis). Plaintiff can carry this burden either by producing (1) direct evidence of discrimination motivating the employment decisions, (2) circumstantial evidence sufficient to allow an inference of discrimination, or (3) statistical proof of a pattern of discrimination. See Wright v. Southland Corp., 187 F.3d 1287, 1293 & n.8 (11th Cir. 1999).

Mr. Concepcion has neither direct nor statistical evidence to support his claims that defendants terminated him because of his national origin. Therefore, he must prove his case through circumstantial evidence. Wright, 187 F.3d at 1293. A case

21

proved through circumstantial evidence is governed by the burden-shifting framework articulated in <u>McDonnell Douglas</u>, 411 U.S. at 802-04.  Under this framework, the plaintiff must first establish a prima facie case of discrimination.  In a termination case, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job; (3) that he suffered an adverse employment action; and (4) that the City treated similarly situated police officers outside of his protected class more favorably.  <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008).

If the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000).  If the defendant articulates one or more legitimate, non-discriminatory reasons for the challenged employment action, the presumption of discrimination is eliminated.  <u>Id.</u> at 143.  The plaintiff then has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision, but were a pretext for discrimination.  <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000).

On this motion for summary judgment, defendants argue that plaintiff has failed to establish the fourth element of his prima facie case. Plaintiff has not responded to that argument, and the undisputed facts support defendants' argument; thus, the Court finds that plaintiff has failed to establish a prima facie case, which requires entry of summary judgment for defendants. See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir. 1998) (explaining that "summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case").

Nevertheless, the Court will assume that Mr. Concepcion established a prima facie case. Therefore, under McDonnell Douglas, the burden shifts to defendant to produce a legitimate, non-discriminatory reason for the challenged action. McDonnell Douglas, 411 U.S. at 802. Defendants have produced a legitimate, non-discriminatory reason for the termination decision– violation of SSPD policies.

Thus, plaintiff must establish a triable issue on pretext. On the record in this case, plaintiff has failed to offer probative evidence that his national origin had anything to do with defendants' termination decision or that defendants disciplined similarly situated employees differently. Plaintiff's conclusory allegation that he was the victim of national origin discrimination fails to create a genuine issue of disputed

23

fact for trial.  Defendants gave an honest explanation for their decision; plaintiff did not show that explanation to be pretextual, and this Court is not free to second-guess it.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)); see also Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair.").  Therefore, summary judgment should be entered for defendants on plaintiff's national origin discrimination claim.

### 4.   **Plaintiff Cannot Establish Municipal Liability**

Plaintiff's equal protection claim should also be dismissed because he cannot make the requisite showing of municipal liability.

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 694 (1978); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 129-30 (1988) (those with authority to initiate

24

personnel decisions are not final policymakers if their decisions are subject to meaningful administrative review); Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997).

Defendants show that City Manager John McDonough is the final policymaker for the City with respect to disciplinary decisions, including terminations. Plaintiff, however, neither identifies any evidence nor even alleges that Mr. McDonough was motivated by discriminatory animus when he upheld plaintiff's termination, particularly because he relied on the recommendation from and record developed by the neutral hearing officer who had the opportunity to hear evidence (including live testimony from multiple witnesses) and argument from both parties. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's Equal Protection claim for this additional reason.

### E.      Defendants are Entitled to Summary Judgment on Plaintiff's Title VII Retaliation Claim

To establish a prima facie case of retaliation under Title VII,[6] a plaintiff must prove that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the

---

[6] As noted supra note 5, the City is the only defendant against whom a Title VII claim may be asserted.

protected activity and the adverse action.  See Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008).  In a retaliation case, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  Morever, to prevail on a Title VII retaliation claim, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).

If a plaintiff establishes a prima facie case, the employer has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994).  The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

Defendants argue that plaintiff has failed to establish either protected conduct or causal connection, and that even if he could, plaintiff has filed to show that the City's proffered reasons for his termination were pretextual.  Because plaintiff has

26

failed to respond to these arguments, and the record supports defendants' position, the undersigned **RECOMMENDS** that summary judgment be entered against plaintiff on his retaliation claim.

F.   **Defendants Are Entitled to Summary Judgment on Plaintiff's Fourth Amendment Claim**

1.   **Plaintiff Cannot Establish his Claim Directly Under the U.S. Constitution (Count 1)**

Defendants argue that plaintiff cannot state a claim directly under the Fourth Amendment (Count 1) because § 1983 is the exclusive remedy for such a claim. Plaintiff does not oppose defendants' argument.  Therefore, summary judgment should be entered against plaintiff on his direct Fourth Amendment claim.

2.   **Plaintiff's Section 1983 Fourth Amendment Claim is Barred by the Statute of Limitations**

As previously discussed, plaintiff's § 1983 Fourth Amendment claim (Count 2) is subject to a two-year statute of limitations.  See supra Part III.D.2.  Plaintiff does not dispute the application of this limitations period.  Because plaintiff filed this § 1983 Fourth Amendment claim too late, summary judgment should be entered for defendants.

27

### 3. Plaintiff Cannot Establish a Violation of his Fourth Amendment rights

Even had plaintiff properly and timely asserted his Fourth Amendment claim, defendants argue that they would still be entitled to summary judgment because plaintiff's Fourth Amendment rights are implicated only if their conduct "infringed an expectation of privacy that society is prepared to consider reasonable." O'Connor v. Ortega, 480 U.S. 709, 715 (1987) (internal quotation marks and citation omitted). They argue that plaintiff had no reasonable expectation of privacy in his Facebook page. Because Mr. Concepcion has failed to respond to this argument, and the undisputed material facts support defendants' position, the undersigned **RECOMMENDS** that summary judgment be granted against plaintiff's Fourth Amendment claim.

### 4. Plaintiff cannot establish municipal liability

The City is also entitled to summary judgment on plaintiff's Fourth Amendment claim for the additional reason that he cannot make the requisite showing of municipal liability. More specifically, plaintiff has neither alleged nor produced evidence showing that Lt. Fraker, Chief Sult, or any other City official violated his Fourth Amendment rights pursuant to any municipal policy or custom.

28

See <u>Smith v. City of Atlanta, Ga.</u>, No, 1:11-CV-765-TWT, 2011 WL 4500022, at *2-3 (N.D.Ga. Sept. 27, 2011) ("Proof of a single isolated incident of unconstitutional activity generally is insufficient to impose municipal liability under <u>Monell</u>.").  Accordingly, summary judgment should be entered against plaintiff on this claim.

> **G.    Defendants are Entitled to Summary Judgment on Plaintiff's Due Process Claims**

Plaintiff alleges that the City violated his due process rights both directly under the Fourteenth Amendment to the U.S. Constitution (Count 1) and through 42 U.S.C. § 1983 (Count 2).  As shown below, defendants are entitled to summary judgment on these claims.

> **1.    Plaintiff Cannot Pursue his Claim Directly Under the U.S. Constitution**

Plaintiff cannot assert a due process claim directly under the Fourteenth Amendment because (as previously discussed) § 1983 is the exclusive remedy for such a claim.

> **2.    Plaintiff's Section 1983 Claim is Barred by the Statute of Limitations**

As discussed above, plaintiff's § 1983/due process claim is also time-barred because the Complaint was filed outside the two-year statute of limitations.

29

### 3.    Plaintiff Cannot Establish a Violation of Due Process

Defendants show, and plaintiff fails to refute, that Mr. Concepcion had no property interest in his employment given his at-will employment.  Thus, he cannot prevail on a procedural due process claim.  See Zimmerman v. Cherokee Cnty., 925 F. Supp. 777, 781 (N.D. Ga. 1995).  Moreover, the undisputed material facts show that the City afforded plaintiff all the procedural due process to which he was entitled.

### H.    Defendants are Entitled to Summary Judgment on Plaintiff's Claim under 42 U.S.C. § 1985(3)

Plaintiff alleges in Count 3 of the Complaint that defendants conspired to discriminate against him against because of his national origin and retaliate against him for reporting the actions of white male employees, in violation of 42 U.S.C. § 1985(3).  However, defendants show, and plaintiff does not refute, that his claim is barred by the two-year statute of limitations and the intra-corporate conspiracy doctrine.  Moreover, defendants show, and plaintiff does not refute, that they are entitled to summary judgment on plaintiff's § 1985 claim for the additional reason that there is no evidence of a violation of that statute by any City official pursuant to any policy or custom because plaintiff's termination was subject to meaningful

30

administrative review.   Given these undisputed arguments, the undersigned **RECOMMENDS** that summary judgment be entered against plaintiff on his § 1985 claim.

**I.      Defendants are Entitled to Summary Judgment on Plaintiff's <u>Claim Under 42 U.S.C. § 1988</u>**

Count 4 of the Complaint purports to allege a claim under 42 U.S.C. § 1988. Section 1988 does not create a separate cause of action.   Rather, the statute is derivative of other civil rights causes of action, authorizing an award of attorneys' fees to a prevailing party in such an action.   <u>See</u> <u>Estes v. Tuscaloosa Cnty., Ala.</u>, 696 F.2d 898, 901 (11th Cir. 1983) (per curiam).   Therefore, defendants are entitled to summary judgment on the § 1988 claim upon dismissal of plaintiff's substantive claims.

**J.      <u>Chief Sult is Entitled to Qualified Immunity</u>**

Defendants argue that Chief Sult is entitled to summary judgment on plaintiff's constitutional § 1983 and § 1985 claims on the additional grounds of qualified immunity.   Because plaintiff does not oppose this argument, and the undisputed facts support it, the undersigned **RECOMMENDS** that summary judgment be entered for Chief Sult on this basis.

31

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the undersigned **RECOMMENDS** that

Defendants' Motion for Summary Judgment [25] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 27th day of August, 2013.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

32